## UNITED STATES DISTRICT COURT FOR THE

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES CONNER and<br>FRANCES NASH; individually and on<br>behalf of all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>MENU FOODS, INC, MENU FOODS<br>INCOME FUNDS, and MENU FOODS<br>MIDWEST CORPORATION,<br><br>　　　　　Defendant. | Court File No. _____<br><br>**INDIVIDUAL AND CLASS ACTION COMPLAINT, INCLUDING COMPENSATION FOR VETERINARY MONITORING FOR CLASS MEMBERS' PETS, COMPENSATION FOR EMOTIONAL DISTRESS, REIMBURSEMENT OF VETERINARY EXPENSES INCURRED BY CLASS MEMBERS, AND OTHER DAMAGES AND EQUITABLE RELIEF**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

　　　　1.　　　　As the pet food industry knows all too well — Americans love their pets. Indeed, this multi-million dollar industry has grown exponentially over the past decade as more and more Americans own more and more pets. Over the past few months, however, this essentially unregulated industry has shown what can happen when a company recklessly ignores possible early warning signs regarding one of its most popular lines of pet food. Instead of focusing on doing the right thing, the Defendants in this case have engaged in a classic case of "public relations first, clients last" mentality with respect to its tainted, deadly pet food. As outlined in this complaint, as early as December 2006, the Defendants were getting reports of animals getting very ill after eating Menu Foods' products. Yet, the Defendants waited almost three months before announcing a recall.

1

2.       The Plaintiffs in this case are united by love of their pets and by their desire to see that justice is done for all pet lovers in the United States. The Plaintiffs in this case — a representative sample of thousands of others in a similar situation — ask that the Defendants be held fully accountable and that measures are taken to ensure that the unnecessary deaths of the hundreds (and possibly thousands) of loved pets never happens again.  In filing this complaint, these Plaintiffs ask this Court to, *inter alia*, (i) establish a veterinary medical monitoring program funded by the Defendants, (ii) require Defendants to reimburse <u>all</u> the out-of-pocket expenses incurred by class members, (iii) require the Defendants to immediately provide detailed information to the public about the tainted pet food, and (iv) appropriately compensate all Class members for their pain and suffering incurred as a result of the deaths of their beloved pets. In addition, the Plaintiffs demand that the Defendants immediately take steps to ensure that the distribution of tainted pet food will never happen again and such further relief as may address the emotional loss suffered by the class who lost pets as a result of tainted food.

3.       Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on their own behalf and as representatives of a Class.  Plaintiffs and members of the Class have also incurred significant costs for veterinary and/or other economic losses and will continue to incur such expenses and losses in the future.  In addition, Class members have had to pay for food that is no longer useable, and Defendants must reimburse them for the cost of these purchases.

## **PARTIES**

4.       Individual and Representative Plaintiff James Conner is a member of the class and lost his much loved cat. "Lilly" was a female cat.  She received a wellness exam several weeks ago and was in perfect health.  On March 20, 2007, after eating the recalled cat food, Lilly began

2

vomiting, having diarrhea, drinking a lot of water and avoiding food. She also exhibited lethargy. The very next day a veterinarian said that there was nothing that could be done and advised Mr. Connor to put Lilly to sleep. An autopsy performed indicates the cause of death was acute renal failure.

Individual and Representative Plaintiff Frances Nash is a member of the class and lost her much loved cat, "Alley." Frances Nash considered Alley to be her best friend. She rescued Alley from neighbors who had abandoned her. Around March 1, 2007, Alley stopped eating and started to drink only water. She had an awful smell. On March 9, 2007, she died.

5. Defendant Menu Foods, Inc. is the main manufacturing plant of the Tainted Pet Food. The plant is located in New Jersey. Defendant Menu Foods Income Funds is the owner and operator of Menu Foods, Inc. Defendant Menu Foods Midwest Corporation is another manufacturing plant owned by Defendant Menu Food Income Funds (collectively, these defendants are referred to as the "Defendants").

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. ' 1332 because Plaintiff alleges that the amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs. Further, this Court has jurisdiction over this action because this is a nationwide class action lawsuit in which over $5,000,000 is at issue and there are more than one hundred putative class members.

7. Venue in this Court is proper pursuant to 28 U.S.C. ' 1391 in that substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District, and Defendant is subject to personal jurisdiction in this District. Defendants' manufacturing plant is located in Pennsauken, New Jersey.

## FACTS

8. In late December 2006, Defendants were provided reports of problems — including serious injuries to cats and dogs — with their "cuts and gravy" style pet food (hereinafter "Tainted Pet Food"). As more and more reports came to light, the Defendants decided to "internally" conduct confidential testing. During this testing period, the Company notified the FDA, but apparently decided to keep this information from the public (and distributors).

9. In the meantime, during this "silent" period more and more reports of injuries and deaths linked to the Tainted Pet Food were reported to the Defendants. The Defendants did nothing to warn distributors or the public of the problems. Instead, the Defendants allowed the Tainted Pet Food to sit on store shelves.

10. On March 2, 2007, the first of nine animals in the Defendants' own "secret" feeding trial died of acute renal failure. Four days later, the Defendants switched their supplier of wheat gluten due to the deaths.

11. On March 16, 2007, after a delay of months, the Defendants finally announced a "voluntary" recall of over 60 million cans and pouches of pet foods produced by the Defendants.

12. Yet, even though public reports indicated dozens and dozens of animal deaths linked to their products, the Defendants minimized the problem and would only "confirm" the deaths of "fifteen" cats and "one" dog. The Defendants "PR" spin focused on purported lack of "direct" evidence of the problem, allowing them to continue to delay the announcement of a recall.

13. On March 23, 2007, reports indicated that the Tainted Pet Food contained rat poison ("aminopterin").

14. The recalled products include over 100 brands of pet food and pet treats:

Recalled cat foods:

America's Choice, Preferred Pets; Authority; Best Choice; Companion; Compliments; Demoulas Market Basket; Eukanuba; Fine Feline Cat; Food Lion; Foodtown; Giant Companion; Hannaford; Hill Country Fare; Hy-Vee; Iams; Laura Lynn; Li'l Red; Loving Meals; Meijer's Main Choice; Nutriplan; Nutro Max Gourmet Classics; Nutro Natural Choice; Paws; Pet Pride; Presidents Choice; Price Chopper; Priority US; Save-A-Lot Special Blend; Schnucks; Science Diet Feline Savory Cuts Cans; Sophistacat; Special Kitty Canada; Special Kitty US; Springfield Prize; Sprout; Stop & Shop Companion; Tops Companion; Wegmans; Weis Total Pet; Western Family US; White Rose; and Winn Dixie.

Recalled dog foods:

America's Choice, Preferred Pets; Authority; Award; Best Choice; Big Bet; Big Red; Bloom; Cadillac; Companion; Demoulas Market Basket; Eukanuba; Food Lion; Giant Companion; Great Choice; Hannaford; Hill Country Fare; Hy-Vee; Iams; Laura Lynn; Loving Meals; Meijer's Main Choice; Mighty Dog Pouch; Mixables; Nutriplan; Nutro Max; Nutro Natural Choice; Nutro Ultra; Nutro; Ol'Roy Canada; Ol'Roy US; Paws; Pet Essentials; Pet Pride - Good n Meaty; Presidents Choice; Price Chopper; Priority Canada; Priority US; Publix; Roche Brothers; Save-A-Lot Choice Morsels; Schnucks; Springfield Prize; Sprout; Stater Brothers; Stop & Shop Companion; Tops Companion; Wegmans Bruiser; Weis Total Pet; Western Family US; White Rose; Winn Dixie; and Your Pet.

15. Due to the delay in announcing the recall, hundreds and hundreds of beloved pets needlessly died or have become very ill. Although the Defendants claim to be "sorry" — for Plaintiffs and Class members, this purported apology is too little too late. Had the Defendants fully and timely reported the problem to the public, these pets would be alive and well today.

16. Today, despite the Defendants downplay of the problem, more than two thousand self-reported deaths and injuries have been reported on the internet. With a potential 17% of the 60 million tainted products containing poison, the real numbers are in the thousands and thousands.

17. This lawsuit seeks compensatory damages and equitable relief.

## CLASS ACTION ALLEGATIONS

18. Plaintiffs bring this action on their own behalf and as representatives of a class consisting of all persons who purchased the pet food under the Defendant's label.

19. Plaintiffs seek certification of the claims asserted herein pursuant to Fed. R. Civ. P. 23(b)(2) and/or (b)(3) for equitable, injunctive, and declaratory relief to create a Court-supervised program funded by the Defendant to provide class members with medical screening, medical research and education, and a medical/legal registry to assure that Class members pets receive prompt and proper veterinary treatment to mitigate the risk of a life threatening injuries to their pets.

20. The named Plaintiffs herein are members of the Class they seeks to represent.

21. The Class is so numerous that joinder of all members is impracticable.

22. The Class is comprised of "all persons in the United States who purchased the Tainted Pet Food after December 1, 2006."

23. There are questions of law and fact common to the Class including, but not limited to:

    a. Whether Defendants negligently and/or fraudulently distributed, promoted, tested, sold, and/or marketed tainted pet food;

    b. Whether Defendants conducted adequate study, testing, and analysis to determine whether and to what extent its pet food was unsafe;

    c. Whether Defendants engaged in unconscionable, deceptive, and/or unreasonable business practices and conduct;

    d. Whether Defendants knowingly, intentionally, or negligently concealed, suppressed, or omitted material information concerning the safety of their pet food from the public;

    e. Whether the Class has suffered injury by virtue of the Defendants' negligence, recklessness, carelessness, and/or unconscionable and/or deceptive business practices and conduct;

    f. Whether the Defendants falsely and fraudulently misrepresented in their advertisements, promotional materials, and other materials, the safety of its pet food; and

    g. Whether Defendants are strictly liable to the Class.

24. These and other questions of law and/or fact are common to the Class and predominate over any questions affecting only individual Class members.

25. The claims of the named Plaintiffs are typical of the claims of the respective Class they seek to represent, in that the name Plaintiffs and all members of the proposed Class own pets which ingested the tainted pet food.

26. In the case of the proposed Court-supervised Veterinary Medical Monitoring Program, the representative Plaintiff and the Class as a whole will benefit from such relief.

27. Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class they seek to represent.

28. Plaintiffs have retained counsel competent and experienced in complex class actions to represent them and the members of the proposed Class. Accordingly, the interests of the Class will adequately be protected and advanced. In addition, there is no conflict of interest among Plaintiffs and the members of the proposed Class.

29. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted on grounds generally applicable to the Class, making appropriate injunctive and/or declaratory relief in the form of a Veterinary Medical Monitoring Program.

30. Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because, as set forth above, common issues of law and fact predominate over any individual issues and certification of the claims as class claims is superior to other available methods for the fair and efficient adjudication of these claims. In addition, there would be enormous economies to the

courts and parties in litigating these common issues on a class-wide basis rather in individual trials. Plaintiffs foresee no difficulties in the management of this action as a class action.

## CLASS CLAIMS

## FIRST CAUSE OF ACTION

### Veterinary Medical Monitoring Program

31. Plaintiffs hereby restate and reallege each and every allegation set forth above with the same force and effect as if set forth herein and repeated at length.

32. As a direct result of Defendants' actions and omissions, Plaintiffs and Class members' Pets have ingested tainted and poisoned food. This potential risk of death of the pets requires diagnostic veterinary medical examinations. By monitoring and testing, it can be determined whether the pets have ingested the tainted food. Through such frequent testing lives of the animals can be saved.

33. Veterinary monitoring is the most appropriate method to save Pets' lives.

34. Accordingly, Defendants should be required to establish a veterinary medical monitoring program that includes, *inter alia*:

    a. establishing a trust fund, in an amount to be determined, to pay for the veterinary monitoring, as frequently as determined to be necessary, as well as to pay development and/or research;

    b. notifying all members of the Class that their Pets require frequent monitoring; and

    c. providing information to treating veterinarians to aid them in detecting poisoning.

35. Plaintiffs and the members of the Class have no adequate remedy at law in that monetary damages alone cannot compensate them for the risk to their Pets. Without a Court-

monitoring program, as described above, Plaintiffs and the members of the Class will continue to face injury to their Pets.

## SECOND CAUSE OF ACTION

### [Fraudulent Concealment]

36. Plaintiffs hereby restate and reallege each and every allegation set forth above with the same force and effect as if set forth herein and repeated at length.

37. Plaintiffs and Class members did not know and could not reasonably have known of the Tainted Pet Food.

38. Defendants actively concealed the defect and their wrongful conduct in order to prevent, and succeeded in preventing, adverse publicity and Plaintiffs and the Class members from discovering the poisoning.

39. Defendants continued to sell the tainted food.

40. As a result of Defendants' fraudulent concealment, Plaintiffs and Class members, in the exercise of due diligence, could not have reasonably discovered the Tainted Pet Food.

41. Plaintiffs and the Class have suffered injury and losses, including emotional distress.

## THIRD CAUSE OF ACTION

### [Fraud]

42. Plaintiffs hereby restate and reallege each and every allegation set forth above with the same force and effect as if set forth herein and repeated at length.

43. Defendants, while in possession of unique and pertinent information involving the pet food, presented their food as safe. Defendants suppressed this information and continued

sales and marketing of their products to the general public. Defendants knew or should have known Plaintiffs and fellow Class members had no means, other than Defendants' full, accurate, and objective disclosure, of obtaining the relevant information.

44. Defendants' misrepresentations and omissions were made intentionally to induce Plaintiffs and fellow Class members to purchase the pet food.

45. Defendants' conduct took unconscionable advantage of their dominant position of knowledge, engaging in fraud in their relationship with the Plaintiffs and fellow Class members.

46. As a result, Plaintiffs and Class members have sustained and will continue to sustain injuries, including economic losses, and other damages, and are therefore entitled to compensatory damages and equitable and declaratory relief according to proof.

## FOURTH CAUSE OF ACTION

### [New Jersey Consumer Fraud]

47. Plaintiffs hereby restate and reallege each and every allegation set forth above with the same force and effect as if set forth herein and repeated at length.

48. Defendants are the researcher, developer, designer, tester, manufacturer, inspector, labeler, distributor, marketer, promoter, and seller and/or otherwise released Tainted Pet Food into the stream of commerce.

49. Defendants knew or should have known that the use of Tainted Pet Food causes serious and life threatening injuries to animals, but failed to warn the public, including Plaintiffs, of same.

50. In violation of the New Jersey Consumer Fraud Act, Defendants made untrue, deceptive or misleading representations of material facts to, and omitted and/or concealed material facts from Plaintiffs and the Class.

51. Defendants' statements and omissions were undertaken with the intent that consumers, including Plaintiffs, would rely on Defendants statements and/or omissions.

52. The aforesaid promotion and release of Tainted Pet Food into the stream of commerce constitutes an unconscionable commercial practice, deception, false pretense, misrepresentation, and/or knowing concealment, suppression, or omission of material facts with the intent that others would rely upon such concealment, suppression or omission in connection with the sale or advertisement of such merchandise or services by Defendants, in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.*

53. Defendants concealed, omitted, or minimized the side effects of Tainted Pet Food, provided misinformation about risks and potential harms from Tainted Pet Food, and succeeded in persuading consumers to purchase for approved use Tainted Pet Food.

54. Defendants' practice of promoting and marketing Tainted Pet Food created and reinforced a false impression as to the safety of the Tainted Pet Food, thereby placing pets at risk of serious injuries and potentially lethal side effects.

55. Defendants intended that others would rely upon its concealment, suppression or omission of the risks of animals ingesting the Tainted Pet Food.

56. Defendants' actions in connection with manufacturing, distributing, and marketing Tainted Pet Food as set forth herein evidence a lack of good faith, honesty in fact and observance of fair dealing so as to constitute unconscionable commercial practices, in violation of the New Jersey Consumer Fraud Act, N.J.S.A., 56:8–1 *et seq.*

57. Defendants acted willfully, knowingly, intentionally, unconscionably and with reckless indifference when committing these acts of consumer fraud.

58. As a direct and proximate result of the acts of consumer fraud set forth above, Plaintiffs purchased unsafe products and incurred monetary expense, risk and injury to their pets previously set forth herein.

**WHEREFORE,** Plaintiffs demand judgment against Defendants for all such compensatory, statutory and punitive damages available under applicable law, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## FIFTH CAUSE OF ACTION

### [Strict Liability - Failure To Warn]

59. Plaintiffs hereby restate and reallege each and every allegation set forth above with the same force and effect as if set forth herein and repeated at length.

60. Defendants developed, manufactured, marketed, and distributed the pet food.

61. Defendants did not give an adequate, meaningful warning regarding the risk of injury from their pet food.

62. As a direct and proximate result of Defendants' failure to warn of this serious risk, the Plaintiffs have suffered damages.

## SIXTH CAUSE OF ACTION

### [Negligence]

63. Plaintiffs hereby restate and reallege each and every allegation set forth above with the same force and effect as if set forth herein and repeated at length.

64. Defendants are the designer, manufacturer, seller, and supplier of the pet food.

65. Defendants had a duty to exercise reasonable care in the design, manufacture, sale and/or distribution of the their pet food.

66. Defendants were negligent in the design, manufacture, testing, advertising, marketing, promotion, labeling, failure to warm, and sale of the their pet food.

67. Defendants' actions as described herein constitute knowing omissions, suppression or concealment of material facts, made with the intent that others would rely upon such concealment, suppression or omissions in connection with the marketing of the pet food.

68. The behavior of the Defendants demonstrates that Defendants acted unlawfully and negligently, used or employed unconscionable commercial and business practices, engaged in deception, fraud, false pretenses, false promises or misrepresentations, and/or perpetrated the knowing concealment, suppression or omission of material facts with the intent that consumers, including Plaintiffs, would rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of their pet food.

69. Defendants' negligence was a proximate cause of the increased risk of harm suffered by Plaintiffs' pets as previously set forth herein.

## SEVENTH CAUSE OF ACTION

### [Breach Of Implied Warranties]

70. Plaintiffs hereby restate and reallege each and every allegation set forth above with the same force and effect as if set forth herein and repeated at length.

71. Defendants are in the business of designing, manufacturing and/or supplying and/or placing into the stream of commerce affected pet food.

72. By placing affected pet food into the stream of commerce, said Defendants impliedly warranted that the affected product was merchantable and fit and safe for their intended use.

73. Defendants breached the implied warranty for the Tainted Pet Food, because said products were defective, unmerchantable, and not fit for their intended purpose.

74. Plaintiffs' pets were a foreseeable user of the Tainted Pet Food.

75. As a direct and proximate result of Defendants' breach of implied warranties, Plaintiffs' pets suffered and will continue to risk possible death and suffer injury, disability, expense and economic loss as previously described, rendering Defendants liable for said damages.

**[Non-Class Claims]**

**EIGHTH CAUSE OF ACTION**

**[Emotional Distress]**

76. Plaintiffs hereby restate and reallege each and every allegation set forth above with the same force and effect as if set forth herein and repeated at length.

77. This Class is assumed individually and not as a class claim by each Plaintiff.

78. Individual Plaintiffs have suffered and will continue to suffer emotional distress as a result of the Defendants' actions.

79. Individual Plaintiffs seek recovery and damages due to the emotional distress caused by Defendants.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs request that this Court enter a judgment against the Defendants and in favor of the Plaintiffs and the Class and award the following relief:

A. That this action be certified as a class action on behalf of the proposed Class described herein and that counsel of record be appointed to represent the Class;

B. That a comprehensive Court-supervised Veterinary Monitoring Program be established;

C. For general damages in an amount to be proven at the time of trial;

D. For special damages in an amount to be proven at the time of trial;

E. For pre-judgment and post-judgment interest on the above general and special damages;

F. For restitution and disgorgement of all profits;

G. For compensatory and other damages, as the Court may determine;

H. For exemplary and punitive damages, to the extent permissible by law and in an amount to be proven at the time of trial, and sufficient to punish Defendant or to deter them and other from repeating the injurious conduct alleged herein or similar conduct;

I. Costs, including experts' fees and attorneys' fees and expenses, and the costs of prosecuting this action; and

J. Such other further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of himself and all others similarly situated, hereby demands a jury trial as to all claims triable in this action.

Dated: April 6, 2007                               s/ Scott Alan George_____

SEEGER WEISS LLP
Christopher A. Seeger
Scott A. George
550 Broad Street
Suite 920
Newark, New Jersey 07102
Telephone: 973-639-9100
Facsimile: 973-639-9393

15

*Of Counsel*
SEEGER WEISS LLP
Jonathan Shub
1200 Walnut Street, 5th Floor
Philadelphia, PA 19107
Telephone: 215-735-7580
Facsimile:  215-735-7583